**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **SHANILLE NELSON,** | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. RWT 06-cv-0154 |
| | * | |
| **CORPORATE FITNESS WORKS, INC.,** | * | |
| | * | |
| Defendant. | * | |

**\*\*\*\*\*\*\***

## <u>MEMORANDUM OPINION</u>

Plaintiff Shanille Nelson ("Nelson") brings this employment discrimination action, *pro se*, against Defendant Corporate Fitness Works, Inc., ("CFW") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, <u>et. seq.</u>  Nelson alleges that CFW unlawfully terminated her employment due to discrimination based upon her (1) race, (2) sex, and (3) disability.  Nelson seeks financial damages in the form of two years of lost salary as well as 100% profit sharing for seven years of service to the company.

CFW moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, moved for summary judgment.  Upon review of the papers filed, the undersigned finds a hearing in this matter to be unnecessary.  Local Rule 105.6 (D. Md. 2004).  For the reasons that follow, this Court will grant Defendant's motion.

### <u>Facts</u>

#### (i) <u>The Complaint</u>

In her Complaint filed on January 19, 2006, Nelson alleged that: "On April 20, 2004, Sheila Drohan, CEO for [Defendant], contacted me at home during maternity leave and informed me that

I was not needed back at work therefore there was no reason for me to return after my maternity leave was completed.  I would like to request two years salary, along with 100% Profit Sharing for seven years service."

### (ii) The Drohan Affidavit

CFW is a woman-owned fitness management and consulting company headquartered in Montgomery Village, Maryland.  In an uncontroverted affidavit, Sheila Drohan, CEO of CFW, testified that her company provides health, fitness and recreational services for a variety of businesses, including corporations, hospitals and hotels.  CFW maintains regional offices in Kansas City, St. Louis, Tampa, Pittsburgh, and Virginia.  The company employs approximately 102 employees, including 94 Caucasians, three African-Americans, three Latinos and two Asians.

Nelson began her employment with CFW on or about August 10, 1999 as CFW's Payroll Benefits manager.  Nelson was still employed in that capacity on or about March 1, 2004, when CFW granted Nelson six weeks of maternity leave.  CFW's policy is that the maximum time off from work is six weeks, or 42 consecutive days, inclusive of any holiday, weekend or vacation days, and the employee is required to return to work on the 43rd day.[1]  Extensions of maternity leave may be granted with the approval of CFW's CEO.

On or about April 8, 2004, Nelson's doctor sent a fax to CFW's office, stating that Nelson would need to stay home from work until May 3, 2004.  Nelson did not complete the company forms required to request additional leave time, nor did she speak with the CFW's CEO to discuss the request for additional leave time.  Regardless, CFW's CEO granted Nelson's request, and extended

---

[1]Under CFW's policy, it appears that Nelson was due to return to work on Monday April 12, 2004.

her leave time until May 3, 2004.  On April 20, 2004, CFW's CEO and Human Resources Director telephoned Nelson at home to inform her that her employment would be terminated, effective May 3, 2004.  On May 3, 2004, CFW terminated Nelson's employment.

(iii) <u>The Investigation by the Montgomery County Office of Human Rights</u>

On or about July 15, 2004, Nelson filed a Complaint of Alleged Discrimination in Employment with the Montgomery County Office of Human Rights ("MCOHR").  Nelson alleged racial discrimination as the basis for her complaint, and stated that while she was employed with CFW, two other white employees gave birth, and each employee was granted an extension of maternity leave beyond the standard six week period.

MCOHR conducted an investigation to determine the merits of Nelson's Complaint.  As a part of the investigation, MCOHR interviewed several present and former employees, including Drohan, CFW's CEO.  Drohan informed the MCOHR that Nelson had, on numerous occasions, told her that she did not have enough time to perform all of her duties in the time allowed.  Drohan stated that when Nelson went out on maternity leave, CFW had trained three employees to handle Nelson's duties, but Drohan was unsure whether this was the best arrangement, given the quantity of work involved.  In order to gauge the amount of time required to complete Nelson's job, the CEO had the employees fill out Time Management Reports to ascertain whether to hire a temporary full-time employee to cover Nelson's duties.  Drohan testified that the Time Management Reports indicated that the three employees were able to complete Nelson's work in an efficient manner in less than 10 hours per week.  Drohan testified that she made the decision to terminate Nelson based on this information, and also because she had received complaints regarding Nelson's alleged inefficiency coordinating payroll.  Drohan also testified that these complaints had been formalized and

3

previously discussed with Nelson, but on each occasion Nelson would allegedly refuse to take responsibility for the actions, instead laying the blame elsewhere.

In addition to these concerns about Nelson's performance and efficiency, Drohan stated that Nelson was also terminated from employment as a part of a broader company reorganization targeted to reduce overhead costs.  Drohan testified that four other employees were affected by the reorganization, all of whom were Caucasian.  As a part of the reorganization, CFW eliminated, or substantially reduced, the positions of Director of Sales, Director of Computer Operations, the Chief Financial Officer, and the Director of Training.   MCOHR reviewed CFW's personnel records, which indicated that the four positions were either entirely eliminated, or replaced with employees of substantially lower rank with reduced salary requirements.

At the conclusion of the investigation, MCOHR found that Nelson failed to "establish a legally sufficient case" and that Nelson had not "carried her overall burden of proof."  Thus, MCOHR determined that "there is insufficient evidence to support the [Plaintiff's] allegation that the [Defendant] terminated her employment based on her race."  On or about October 21, 2005, The United States Equal Employment Opportunity Commission ("EEOC") sent Nelson a Dismissal and Notice of Rights form ("Notice of Rights").  In the Notice, the EEOC adopted the findings of the MCOHR and informed Nelson that she had 90 days to file suit if she chose to do so.

## Analysis

### (i) Nelson's Claims of Discrimination Based Upon Sex and Disability

In order to have standing to commence an action under Title VII, a plaintiff must first exhaust administrative remedies by filing a charge with the EEOC.  Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005).  The exhaustion requirement ensures that the employer is put on notice of

the alleged violations, allowing for the possibility that the matter may be settled out of court.  See EEOC v. American Nat'l Bank, 652 F.2d 1176, 1186 (4th Cir. 1981).  "While [t]he EEOC charge defines the scope of the plaintiff's right to institute a civil suit, [a]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" Miles, 429 F.3d at 491(internal citations omitted). "In other words, '[i]f a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit.'" Miles, 429 F.3d at 491 (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247-48 (4th Cir. 2000)).

Here, when Nelson presented her claim to MCOHR for investigation, the only claim she alleged was one of racial discrimination: "I believe [Defendant] fired me because of my race (African American)."  The EEOC subsequently adopted the findings of the MCOHR, thus ensuring that the only alleged violation investigated and included in the EEOC charge was one of discrimination based upon Nelson's race.   However, Nelson's Complaint in this Court alleges that CFW discriminated against her based upon her (1) race, (2) sex, and (3) disability.

An administrative investigation of discrimination against Nelson based upon her sex and disability can not reasonably be expected to follow the investigation of Nelson's sole claim of racial discrimination.  Under similar circumstances, the Fourth Circuit held that a plaintiff was barred from bringing actions for retaliation and for discrimination based upon *color* and sex, when the previous EEOC charge only included an allegation of discrimination based upon *race*.  See Bryant v. Bell, 288 F.3d 124, 133 (4th Cir. 2002) (stating that an "[a]dministrative investigation of retaliation, and

color and sex discrimination . . .could not reasonably be expected to occur in light of [plaintiff's] sole charge of race discrimination, and the investigation of the complaint did not touch on any matters other than race discrimination.").  Thus, because the scope of Nelson's Complaint exceeds the boundaries set by the allegations contained in Nelson's EEOC charge, the merits of the Nelson's sex and disability discrimination claims cannot be considered.

### (ii) Nelson's Claims of Discrimination Based Upon Race

Nelson's remaining claim in this action is that CFW unlawfully discriminated against her because of her race by terminating her employment.  CFW moves this Court to dismiss Nelson's claim of racial discrimination under Federal Rule of Civil Procedure 12(b)(6) because Nelson does not "plead facts sufficient to state each element of her claim."

When considering a Rule 12(b)(6) motion to dismiss, a court "must accept as true all well-pleaded allegations and must construe the factual allegations in the light most favorable to the plaintiff."  Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994).  In Swierkiewicz v. Sorema N.A., the Supreme Court held that a complaint alleging employment discrimination need not allege specific facts to establish a *prima facie* case of discrimination.  534 U.S. 506, 510-11 (2002). Rather, in order to survive a motion to dismiss, the "ordinary rules for assessing the sufficiency of a complaint apply," namely whether the plaintiff has set forth allegations sufficient to allow the plaintiff the opportunity to present evidence to support his claims.  Id. at 511.  Subsequently, the Fourth Circuit has held, "[o]ur circuit has not, however, interpreted Swierkiewicz as removing the burden of a plaintiff to allege facts sufficient to state all the elements of the claim."  Bass v. E.I. Dupont De Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003); see also Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002) (stating "[T]he Supreme Court's holding in Swierkiewicz v.

<u>Sorema</u> does not alter the basic pleading requirement that a plaintiff set forth facts to allege each element of his claim.")

In order to establish a *prima facie* case of racial discrimination in the enforcement of employee disciplinary measures, a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." <u>Bryant</u>, 288 F.3d at 133. Thus, in a "standard" racial discrimination action, where the defendant moves for dismissal under Rule 12(b)(6), this Court must review the factual allegations in the light most favorable to the plaintiff, and determine whether the plaintiff has alleged facts sufficient to show the four factors outlined above.

This is not a "standard" racial discrimination action, however. As previously noted, Nelson is appearing before this Court *pro se*. As a matter of equity, the Supreme Court has instructed the district courts to construe  liberally the pleadings of a *pro se* plaintiff, "however inartfully plead[ed]." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>see</u> <u>also</u> <u>Boag v. MacDougall</u>, 454 U.S. 364, 365 (1982) (same). Rather than holding these pleadings to the same standards as a licensed attorney, the district courts are not to dismiss a complaint from a *pro se* plaintiff unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Haines</u>, 404 U.S. at 520 (internal citations omitted). In other words, a district court is instructed to review the facts as alleged by the *pro se* plaintiff, however inartfully, and determine if the plaintiff may be entitled to relief under any legal theory which may plausibly be suggested by the facts alleged.

Interpreting this standard, the Fourth Circuit has instructed its district courts to be "especially

solicitous of civil rights plaintiffs,"such as Nelson is in this action.  <u>Gordon v. Leeke</u>, 574 F.2d 1147,

1151 (4th Cir. 1978) (quoting <u>Canty v. City of Richmond, Va. Police Dept.</u>, 383 F.Supp. 1396, 1399

(E.D. Va. 1974).  The reasoning for this "solicitous" nature is persuasively stated by the district

court in <u>Canty</u>, and this Court will cite at length from that opinion:

> This solicitude for a civil rights plaintiff with counsel must
> be heightened when a civil rights plaintiff appears *pro se*.  In
> the great run of *pro se* cases, the issues are faintly articulated
> and often only dimly perceived. There is, therefore, a greater
> burden and a correlative greater responsibility upon the district
> court to insure that the constitutional deprivations are redressed
> and that justice is done.  So, although the Court of Appeals
> cannot mean that it expects the district courts to assume the role
> of advocate for the *pro se* plaintiff . . . the district court must
> examine the *pro se* complaint to see whether the facts alleged,
> or the set of facts which the plaintiff might be able to prove,
> could very well provide a basis for recovery under any of the
> civil rights acts . . . .

<u>Canty</u>, 383 F.Supp. at 1400.

Accordingly, this Court, in considering the merits of CFW's motion to dismiss under Rule

12(b)(6), will not allow strict adherence to the technical pleading requirements to defeat the *pro se*

Plaintiff's opportunity for vindication of her rights in this action.  <u>See</u> <u>Gordon</u>, 574 F.2d at 1151.

Under this forgiving standard, the Court concludes that the Complaint alleges sufficient facts to

assert a claim of discrimination against Nelson due to her race.  The inquiry, however, does not end

here because CFW has moved alternatively for summary judgment.

Under Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is proper 'if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322

(1986).  "A material fact is one that 'might affect the outcome of the suit under the governing law.'"
Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty
Lobby, 477 U.S. 242, 248 (1986).

 The Supreme Court has made clear that in order for the non-moving party to raise a genuine
issue of material fact, that party "may not rest upon mere allegations or denials of his pleading, but
must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at
256.  The Court may rely only on facts supported in the record, not simply assertions in the
pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims
or defenses' from proceeding to trial."  Felty v. Grave-Humphreys Co., 818 F.2d 1126, 1128 (4th
Cir. 1987) (citing Celotex, 477 U.S. at 323-24).

 In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn
therefrom "in the light most favorable to the party opposing the motion,"  Matsushita Elec. Indus.
Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), but the opponent must produce evidence upon
which a reasonable fact finder could rely.  Celotex, 477 U.S. at 323.  The mere existence of a
"scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order
granting summary judgment.  Anderson, 477 U.S. at 252.

 In the employment context, the standards for summary judgment mesh with the McDonnell
Douglas burden-shifting scheme.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973);
Hux v. City of Newport News, Va., 451 F.3d 311, 315 (4th Cir. 2006).  Once a plaintiff establishes
a *prima facie* case of discrimination, the burden shifts to the employer to prove a non-discriminatory
purpose that led to the challenged employment action.  Evans v. Technologies Applications &
Service Co, 80 F.3d 954, 959 (4th Cir. 1996).  If the employer provides a sufficient,

non-discriminatory explanation, the burden shifts back to the plaintiff to prove the employer's explanation a mere pretext. Id. At all times, however, the plaintiff "bears the ultimate burden of proving that the employer intentionally discriminated against her." Id. at 959.

CFW's motion for summary judgment challenges Nelson's assertion that her employment was terminated due to her race by proffering two separate justifications for the termination. First, CFW argues that evidence came to light while Nelson was on maternity leave that demonstrated that three current employees could successfully and efficiently perform Nelson's duties in ten hours each week, whereas Nelson was employed forty hours each week. In light of the on-going reorganization of the company in order to reduce costs, CFW determined that Nelson's termination was in the best economic interests of the company. Secondly, CFW stated that Nelson was terminated, in part, because of her previous employment history, and the fact that Drohan, CFW's CEO had received complaints about the quality and efficiency of Nelson's performance. Drohan stated that she formally discussed these complaints with Nelson, but Nelson insisted on laying the blame elsewhere, instead of accepting responsibility. Thus, in its motion for summary judgment, CFW set forth two separate and non-discriminatory reasons justifying Nelson's termination from employment, and countering Nelson's claim of racial discrimination. CFW has therefore satisfied its burden under the McDonnell Douglas burden-shifting framework, and Nelson must overcome this burden by demonstrating that these justifications are a mere pretext for the alleged discrimination. McDonnell Douglas, 411 U.S. at 807.

In her Opposition, Nelson does not counter the justifications for her termination provided by CFW; rather, Nelson states that it is her "belief" that CFW discriminated against her based upon her sex and her disability. Nelson claims that when she told the MCOHR investigator this, the

investigator responded that "a racial discrimination suit will be filed within the [MC]OHR."[2]   In fact, Nelson affirmatively states that she did not believe that she was terminated due to her race: "[I believed my] employment was terminated with [Defendant] during maternity leave this is why I was under the impression that my claim should be filed under sex/pregnancy discrimination."   Her failure to rebut the justifications provided by CFW effectively serves as an acknowledgment of the validity of CFW's reasoning.   Because Nelson has failed to refute CFW's explanations for her termination, she has also failed to meet her burden under <u>McDonnell Douglas</u>.  <u>Id.</u>

Judge Alexander Williams dealt with a similar case in <u>Allen v. Rumsfeld</u>, where the plaintiff brought suit against a former employer alleging racial and disability discrimination, but then failed to address these issues in the opposition.  273 F. Supp.2d 695 (D. Md. 2003).  In ruling on the motion for summary judgment, he held: "In response to Defendant's motion, Plaintiff fails to even mention her disability and race discrimination claims. As it is Plaintiff's responsibility to counter the motion for summary judgment with evidence of race and disability discrimination by Defendant, her failure to proffer any evidence whatsoever in support of these claims means she has failed to meet her burden of proof."  <u>Id.</u> at 703.  Here, Nelson's failure to respond to CFW's non-discriminatory justifications for her termination amounts to a failure on the part of Nelson to establish a genuine

---

[2]Nelson is essentially saying that MCOHR failed to investigate her claims of discrimination properly.  However, even if there were evidence in the record purporting to demonstrate that MCOHR or the EEOC had been negligent or fraudulent in their investigations into this matter, Nelson would still be without legal recourse:  "'The circuits which have addressed the issue have uniformly held that no cause of action against the EEOC exists for challenges to its processing of a claim.'"  <u>Scheerer v. Rose State Coll.</u>, 950 F.2d 661, 663 (10th Cir. 1991) (internal citation omitted) (collecting cases); <u>accord</u> <u>Smith v. Casellas</u>, 119 F.3d 33, 34 (D.C. Cir. 1997) (collecting cases holding "Congress has not authorized, either expressly or impliedly, a cause of action against the EEOC for the EEOC's alleged negligence or other malfeasance in processing an employment discrimination charge.").  Thus, Nelson would be unable to charge the EEOC and MCOHR with negligence in investigating her claims of discrimination based upon her sex and her disability.

issue of material fact as to this issue.  Therefore, this Court must accept as true CFW's proffered

non-discriminatory reasons for Nelson's termination from employment

## **Conclusion**

For the foregoing reasons, this Court will, by separate order, GRANT Defendant's motion

and direct the entry of judgment for costs in its favor.


    10/31/06                                    /s/
DATE                                    ROGER W. TITUS
                                        UNITED STATES DISTRICT JUDGE